<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SUMINDA JAYASUNDERA, | : | |
| | : | Civil Action No. 14-CV-7455 (SDW) (SCM) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| MACY'S LOGISITICS & OPERATIONS, | : | August 3, 2015 |
| DEPARTMENT OF HUMAN RESOURCES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**WIGENTON**, District Judge.

Before this Court is defendant Macy's Logistics and Operations, Department of Human Resources' ("Defendant" or "Macy's") Motion to Compel Arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 2 (2015) ("FAA") and Dismiss the Complaint or alternatively to Stay this Action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, and venue in this District is proper pursuant to 28 U.S.C. § 1391. This Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons herein, Defendant's Motion to Compel Arbitration and Dismiss the Complaint is **GRANTED**.

1

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Suminda Jayasundera ("Plaintiff") commenced this action against his employer Macy's Raritan Distribution Center[1] ("Defendant" or "Macy's") for employment discrimination pursuant to Title VII of the Civil Rights Act of 1964. (Compl. ¶ 1.)

On or about June 10, 2009, Macy's hired Plaintiff as a security officer. (Compl., EEOC Intake Questionnaire.) On May 2, 2013, Plaintiff, by then an "Asset Protection Supervisor," applied for an "Asset Protection Manager" position, and ultimately was not offered the position. (Compl., EEOC Letter.) As a result, Plaintiff filed a complaint with the Human Resources Department of Macy's Logistics and Operations against the Asset Protection Management team. (*Id.*) After the Human Resources Department allegedly found potential violations of company policies, it promised Plaintiff the next vacant managerial position in the Asset Protection department. Plaintiff reapplied for the position in March 2014 and was again rejected. (*Id.*)

In 2003, Macy's established and implemented the Solutions InSTORE program ("SIS"), an internal early dispute resolution program to resolve workplace disputes through arbitration. (Mot. to Compel, 2.) Upon hiring, all associates were provided with materials regarding SIS, including the Solutions InSTORE 2007 Plan Document (2007 Plan Document"), which explained the four-step conflict resolution system that culminated in arbitration before a neutral arbitrator appointed by the American Arbitration Association ("AAA"). (*Id.*)

SIS applied to "any and all such disputes, controversies or claims whether asserted by the Associate [Macy's employee] against the Company and/or against any employee, officer, director or alleged agent of the Company." (Coney Decl., Ex. A, p. 6.) Under the fourth step of the SIS

---

[1] Macy's Raritan Distribution Center, a subsidiary of Macy's Corporate Services, Inc., is misnamed as "Macy's Logistics & Operations, Department of Human Resources" in Plaintiff's Complaint.

2

Program "all employment-related legal disputes, controversies or claims arising out of, or relating to, employment or cessation of employment, whether arising under federal, state or local decisional or statutory law ('Employment-Related Claims') shall be settled exclusively by final and binding arbitration." (*Id.*) As part of new employee paperwork, employees were required to acknowledge receipt of the SIS Plan Document and complete an "Opt-out Election Form" within thirty days of hire. (Coney Decl., ¶ 22, Ex. C.) This form indicates that Defendant informed employees about the SIS program through posters, videos, and numerous documents. (*Id.* ¶ 24, 25.) Defendant alleges that Plaintiff agreed to have his employment disputes resolved through binding arbitration by failing to submit the "opt-out Election Form." (Mot. to Compel, 11, 12.)

On September 13, 2013, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and subsequently received a "Right to Sue" letter. (Compl.) On December 1, 2014, Plaintiff filed a Complaint in this Court against Defendant, alleging origin-based employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (1991), and for "fabricat[ing] documents in a deceitful manner to mislead EEOC investigation." (Dkt. No. 1.) On February 13, 2015, Defendant filed the instant Motion to Compel Arbitration and Dismiss the Complaint or in the alternative, to Stay this action in favor of arbitration. (Dkt. No. 7.) On March 3, 2015, Plaintiff filed a response, to which Defendant filed a reply on March 9, 2015. (Dkt. No. 9, 10.)

**LEGAL STANDARD**

"In considering a motion to compel arbitration, a court must engage in a two-step analysis: it must determine first whether there is a valid agreement to arbitrate and, if so, whether the specific dispute falls within the scope of said agreement." *Thomas v. Jenny Craig, Inc.*, No. 10-2287, 2010 WL 3076861, at * 3 (D.N.J. Aug. 4, 2010) (citing *Century Indem. Co. v. Certain Underwriters at*

3

*Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009); *Salvadori v. Option One Mtg. Corp.*, 420 F.Supp.2d 349, 356 (D.N.J. 2006)). "In doing so, the Court utilizes the summary judgment standard of Federal Rule of Civil Procedure 56(c)." *Id.* (citing *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 n. 9 (3d Cir. 1980)). A court shall grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Panton v. Nash*, 317 F. App'x 257, 258 (3d Cir. 2009) (citing FED. R. CIV. P. 56(c)). Therefore, a court must first determine whether there is a genuine issue of material fact as to whether a valid arbitration agreement exists. *See Par-Knit Mills, Inc.*, 636 F.2d at 54. In making this determination, a court must give the party opposing arbitration "the benefit of all reasonable doubts and inferences that may arise." *Id*. In examining whether certain claims fall within the ambit of an arbitration clause, a court must "focus . . . on the 'factual allegations in the complaint rather than the legal causes of action asserted.'" *Mutual Ben. Life Ins. Co. v. Zimmerman*, 783 F.Supp. 853, 869 (D.N.J. 1992) (quoting *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987)). If the court decides that the claims at issue fall within the scope of the arbitration clause, the court must then refer the dispute to arbitration without considering the merits of the case. *See id.*

**DISCUSSION**

*The Federal Arbitration Act Applies to the Arbitration Agreement*

Defendant filed the instant motion to compel arbitration pursuant to the Federal Arbitration Act ("FAA"). Section 4 of the FAA provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit

4

>arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. Any dispute settled by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA allows a district court to compel, or enjoin arbitration if required. 9 U.S.C. §§ 3, 5; *John Hancock Mut. Life Ins. Co. v. Olick,* 151 F.3d 132, 137 (3d Cir. 1998). The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Sarbak v. Citigroup Global Markets, Inc.*, 354 F. Supp. 2d 531 (D.N.J. 2004). These provisions demonstrate a "liberal federal policy favoring arbitration agreements." *Moses*, 460 U.S. at 24. In order to apply the FAA, the district court must find that the contract with the arbitration provision "evidenc[es] a transaction involving [interstate] commerce." *Id.* (citing 9 U.S.C. § 2). The contract "need have only the slightest nexus with interstate commerce." *Crawford v. West Jersey Health Systems (Voorhees Div.),* 847 F. Supp. 1232, 1240 (D.N.J. 1994) (citations omitted). In the employment context, the Supreme Court has ruled that FAA enforcement of arbitration agreements is required. *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26 (1991); *see also Crawford,* 847 F. Supp. at 1242-43 (enforcing arbitration of the Title VII and NJLAD claims). In *Great Western Mortgage Corporation. v. Peacock,* the Third Circuit found that "employees were not included within the class of those excepted from the operation of the FAA, and hence were required to arbitrate their disputes." 110 F. 3d 222, 227 (3d Cir. 1997).

Here, the FAA applies to the arbitration agreement because both Defendant's line of business and Plaintiff's employment duties involve participation in interstate commerce on a daily basis. Defendant is involved in interstate commerce by providing services and having offices throughout the United States. Plaintiff, as an "Asset Protection Supervisor" for Defendant, was

5

required to communicate with Defendant's customers daily. As such, both Plaintiff's employment duties and Defendant's line of business fall within the broad definition of interstate commerce, and the FAA governs the arbitration agreement.

### *The Arbitration Provision is Valid and Enforceable*

State contract law principles govern the validity and enforceability of an arbitration agreement. *Leodori v. Cigna Corp.,* 175 N.J. 293, 302 (2003). In New Jersey, a contract is enforceable where there "is a bargained for exchange of promises or performance that may consist of an act, a forbearance, or the creation, modification, or destruction of a legal relation." *Martindale v. Sandvik,* 173 N.J. 76, 88 (2002) (quoting Restatement of Contracts § 71) (a contract requires an offer, acceptance, and consideration). Likewise, an arbitration agreement is enforceable if it is supported by consideration and it was knowingly and voluntarily entered into. *Id.*

Failure to opt out of an arbitration program after receiving notice is sufficient conduct to signify acceptance. *See Coiro v. Wachovia Bank N.A.*, No. 11-cv-03587, 2012 WL 628514, at *5 (D.N.J. Feb. 27, 2012) (finding the account-holder accepted the terms of the arbitration agreement by failing to cancel her account within thirty days after receiving notice); *see also Caldwell,* 958 F. Supp. at 974-75 (noting that even when an employment contract with an arbitration clause is an adhesion contract, the agreement is generally still valid and enforceable where the employee had an opportunity to review its terms). "In all jurisdictions that have considered the question [of employment as a contract], courts have held that the creation of an employment relationship . . . is sufficient consideration to uphold an arbitration agreement contained in an employment application." *Martindale*, 173 N.J. at 88.

Here, Defendant made a valid offer to submit Plaintiff's claims to arbitration. The language of the SIS New Hire Brochure explicitly states: "[a]ll Associates are automatically covered by all 4 steps of the program by taking or continuing a job with the Company . . . . [Y]ou are covered by Step 4 unless and until you exercise the option to exclude yourself from arbitration." (Coney Decl., Plan Document 5.) Plaintiff accepted the terms of the arbitration agreement by electronically signing the SIS Acknowledgement Form and failing to return the "opt-out Election Form" within thirty days. Sufficient consideration for the arbitration agreement also exists, as the agreement mutually obliges Macy's and Plaintiff to arbitrate all employment disputes and Plaintiff has continued his employment with Macy's.

Furthermore, the Macy's SIS program at issue has specifically been held to be valid and enforceable in New Jersey.[2] *See Mount v. Macy's Retail Holdings, Inc.,* No. 12-cv-1081, slip op. at 18-19 (D.N.J. Jan. 8, 2013). In *Mount*, Plaintiff electronically signed the SIS acknowledgment form and did not opt out of step four of the program; therefore, accepting and continuing employment was valid consideration of the default arbitration terms. *Id.* Likewise, here, all of the elements of a valid contract have been satisfied.

*The Arbitration Agreement Covers all of Plaintiff's Claims*

An employee's claim is encompassed within an employer's arbitration provision when the agreement "unambiguously sets forth the drafter's intention to arbitrate all employment-related claims" even if it does not name the specific statute at issue. *Leodori*, 175 N.J. at 302-03. The arbitration provision included in the Solutions InSTORE 2007 Plan Document, provides that: "all employment-related legal disputes, controversies or claims arising out of, or relating to,

---

[2] Chief Judge Simandle upheld the enforceability of Macy's SIS arbitration agreement and expressly stated that it was a valid contract under New Jersey law. *See Mount v. Macy's Retail Holdings, Inc.,* No. 12-cv-1081, slip op. at 18-19 (D.N.J. Jan. 8, 2013).

employment or cessation of employment, whether arising under federal, state or local decisional or statutory law shall be settled exclusively by final binding arbitration." (Coney Decl., ¶ 13, Ex. A. pp. 6-7). "Employment related claims" include, but are not limited to, any issues arising under state law, employment termination, breach of duty of loyalty, misappropriation, contract law, and tort law. The 2007 Plan Document explicitly includes claims arising under Title VII of the Civil Rights Act of 1964 and other state statutes. (Coney Decl., Ex. A, p. 6.) Plaintiff's unsupported claims of origin-based discrimination under Title VII of the Civil Rights Act of 1964, "fabrication of deceitful documents," psychological abuse, mental torture, and threatening behavior fall within the arbitration provision as they directly arise from Plaintiff's employment with Macy's.

In direct response to this motion, Plaintiff contends that his failure to promote claim is not the subject of the SIS Program. In particular, he claims that the SIS Program fails to provide "adequate protection" and that there is no provision allowing him to use the SIS Program. At best, Plaintiff's arguments concern the validity of the underlying employment agreement, not the arbitration provision itself. The Supreme Court in *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006), established the rule that "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Buckeye*, 546 U.S. at 449. In light of *Buckeye*, Plaintiff's arguments do not warrant further discussion.

**CONCLUSION**

For the reasons set forth above, Defendant's Motion to Compel Arbitration and Dismiss the Complaint is **GRANTED**.

s/ Susan D. Wigenton, U.S.D.J.

Orig: Clerk
cc: Parties
      Steven C. Mannion, U.S.M.J.